(No. 41672.—

THE PEOPLE OF THE STATE OF ILLINOIS, Appellee, *vs.* ROBERT E. BROCK, Appellant.

*Opinion filed May 20, 1970.*

GEORGE W. KENNEY, of Chicago, appointed by the court, for appellant.

RICHARD A. HOLLIS, State's Attorney, of Springfield, (D. BRADLEY BLODGETT, First Assistant State's Attorney, of counsel,) for the People.

Mr. JUSTICE SCHAEFER delivered the opinion of the court:

On May 31, 1966, the defendant, Robert E. Brock, pleaded guilty in the circuit court of Sangamon County to indictments which charged him with the crimes of murder and theft. He was sentenced to imprisonment in the penitentiary for a term of not less than 14 nor more than 18 years for the crime of murder, and to a concurrent sentence of not less than one nor more than five years for the crime of theft.

On April 13, 1967, the defendant filed his *pro se* petition under the Post-Conviction Hearing Act, and an attorney was appointed to represent him. That attorney, who was the public defender who had represented the defendant when his plea of guilty was entered, was subsequently granted leave to withdraw and another attorney was appointed to represent the petitioner. Evidence was heard and the petition was denied. The defendant has appealed.

One of the issues presented to this court arises from the fact that the defendant's plea was entered following negotiations between the State's Attorney and the public defender. In his supplemental post-conviction petition the de-

fendant charged that the agreement upon which his plea of guilty was based was not performed, and upon that ground he asked that his plea be set aside. The sentences imposed were those contemplated by the agreement; the charge that the agreement was not fully performed relates to criminal charges then pending against the defendant in Shelby County, Tennessee. The defendant asserts that the State's Attorney undertook to bring about the dismissal of those charges, as well as charges pending in Will County, Illinois, but that the Tennessee charges have not been dismissed.

The State's Attorney testified that before the plea was entered, Joseph Maddox, the public defender, told him that the defendant was very concerned about whether or not charges that were pending against him in Tennessee and Will County, Illinois, "would be prosecuted after he finished whatever term of prison he might get in this case and he asked my opinion—what my opinion was as to whether the prosecuting authorities in Will County and Tennessee would do anything if there was a plea of guilty entered here and a sentence imposed. I told him that in my opinion I didn't feel that either Will County or the State of Tennessee would bother with prosecuting these rather lesser charges against him if he would be convicted of murder in Sangamon County."

The public defender testified that he had engaged in repeated discussions with the State's Attorney and his assistants prior to the entry of the plea of guilty, and that when those discussions had crystallized to a point at which the State's Attorney agreed to make specific recommendations concerning the sentences to be imposed upon a plea of guilty, the matter was taken up with the trial judge who stated that he would follow the recommendations of the State's Attorney. It was understood that an effort would be made to have the defendant incarcerated in the penitentiary at Joliet rather than some other institution, and

that the trial judge would write a letter which would assist the defendant in the event that he applied for parole. He also testified that "it was agreed that the State's attorney's office would take all appropriate and proper causes (sic) to cause the other cases to be dismissed. It is obvious that—the state's attorney of Sangamon County could not dismiss a case in Tennessee, but it was part of the agreement that action—proper action would be taken to see that the other cases would be dismissed." He testified further that the defendant "seemed to be more concerned about the forgery or theft charge in Tennessee than he was concerned about a murder charge in Sangamon County. I repeatedly talked about the seriousness of the charge in Sangamon County and before I could finish a sentence he would be wanting to talk about the charges against him in Tennessee."

It was stipulated that the trial judge, if called as a witness, would testifiy that "a few days prior to the time that Mr. Brock entered his plea of guilty there was a hearing held in my chambers with Mr. Maddox, who represented the defendant, and Mr. Terrell [the State's Attorney], who represented the People, appearing." At that time the court indicated that "under the circumstances as outlined by the state's attorney that the court would follow his recommendation." It was also stipulated that the judge would testify that it was agreed that after the defendant had been in the penitentiary for some years and had been a model prisoner and followed all the rules and regulations of prison life "neither the state's attorney nor the trial court would pose any objection to an application of the prisoner for executive clemency," and that the State's Attorney further indicated that he would do what he could to dispose of any "other pending charges against Brock, I believe in Indiana, Texas or Tennessee—some other states."

The defendant testified that on May 31, 1966, Maddox told him of the recommendations that would be made concerning sentencing. "He also said that Mr. Terrell would

do all and everything he could do to get the charges dismissed and he said that—Mr. Terrell [the State's Attorney], he would contact the sheriff in Memphis, Tennessee and call the authorities in Joliet and dismiss the charges if I plead guilty." The defendant also testified that his attorney advised him that if he did not plead guilty the State's Attorney would either seek the death penalty or a long prison term and in the event the defendant was found guilty would oppose parole, and that the State's Attorney had said that if the defendant refused to change his plea of not guilty "he would contact the sheriff in Memphis and they would try me on those hearings and have them consecutively."

With one exception, all of the matters agreed upon in the negotiations that preceded the defendant's plea of guilty have been fully performed. That exception concerns the Tennessee charges. The defendant contends that his plea was induced by the representation that those charges would be dropped, whereas they have not been. But testimony which has been set forth does not support the contention that it was agreed that the charges would be dropped. The public defender who represented the defendant testified that the State's Attorney's office would take all appropriate steps to cause the other cases to be dismissed, and as he testified, it was obvious that the State's Attorney of Sangamon County could not bring about a dismissal of charges pending in Tennessee.

From correspondence between the State's Attorney and the prosecuting officials in Tennessee it appears that on the date the defendant's plea was entered an assistant State's Attorney telephoned to inquire what disposition would be made of the pending Tennessee charges if the defendant was convicted of murder and sentenced to the Illinois penitentiary. The immediate response was that the Tennessee officials "would be guided by the amount of the sentence in the murder conviction." After the Tennessee officials had

been advised of the sentence that was imposed, they wrote to the State's Attorney, telling him that a detainer would be lodged with the institution in which the defendant was confined, and that they would, "at the time of his release, make the proper evaluation of this cause, and, if able to proceed, Brock should be returned here for prosecution." It thus appears that the State's Attorney did take up with the Tennessee authorities the dismissal of the charges pending there, and that those authorities have not as yet determined what course will ultimately be taken with respect to them. The defendant's charge that the prosecution failed to comply with its undertakings is not sustained by the evidence.

The defendant also urges that the decision of the Supreme Court of Pennsylvania in *Commonwealth* v. *Evans* (1969), 434 Pa. 52, 252 Atl. 2d 689, indicates that the plea of guilty in this case is invalidated because the trial judge participated in the negotiations that preceded the defendant's plea of guilty. That contention is unfounded. In his opinion for the Pennsylvania court, Mr. Justice Roberts carefully pointed out that the decision was fully in accord with the American Bar Association's Minimum Standards Relating to Pleas of Guilty. Those standards provide: "3.3 Responsibilities of the trial judge. (a) The trial judge should not participate in plea discussions. (b) If a tentative plea agreement has been reached which contemplates entry of a plea of guilty or nolo contendere in the expectation that other charges before the court will be dismissed or that sentence concessions will be granted, upon request of the parties the trial judge may permit the disclosure to him of the tentative agreement and the reasons therefor in advance of the time for tender of the plea. He may then indicate to the prosecuting attorney and defense counsel whether he will concur in the proposed disposition if the information in the presentence report is consistent with the representations made to him." In the present case the trial judge became

involved only after the State's Attorney and the attorney for the defendant had reached a tentative agreement as to the sentences that would be recommended, and only then did he indicate that he would concur in the recommended disposition. The record contains no suggestion to the contrary.

The defendant's post-conviction petition also charged that his plea of guilty was the result of a confession taken in violation of his constitutional rights. Prior to the entry of the defendant's plea, a lengthy hearing had been had upon the defendant's motion to suppress his confession, and the motion had been denied. As we understand the record, the trial judge who conducted the post-conviction hearing undertook to review the transcript of the testimony upon the motion to suppress to determine whether or not the defendant's constitutional rights had been violated, but refused to hear additional evidence concerning the circumstances surrounding the defendant's confession.

We have examined the allegations of the defendant's original and supplemental post-conviction petitions, as well as the transcript of the testimony at the hearing upon the motion to suppress the confession, and we are of the opinion that all of the matters alleged in the defendant's petitions which could have a significant bearing upon the voluntariness of his confession were covered by the testimony introduced at the hearing on the motion to suppress.

The crime in this case was committed in July of 1965. The victim's car was driven from Illinois to Missouri and the defendant was arrested on November 18, 1965, in El Paso, Texas, and there detained by Federal authorities upon a Dyer Act charge. The sheriff and an assistant State's Attorney of Sangamon County went to Texas to interview the defendant but upon the advice of counsel retained by his Texas employer to represent him, he refused to discuss the crime with them. On December 11 he was returned to Sangamon County by Federal officers. On December 12 the

defendant was interviewed by the sheriff and an assistant State's Attorney who advised him of his constitutional rights. He named an attorney whom he wished to consult, but there was no attorney by that name listed in the telephone book. He was told that he could call any other attorney but he did not do so because he lacked funds. In his first interview with the prosecuting officials in Illinois he refused to discuss the crime but requested them to return the next day. He continued that refusal on the following day and again asked them to return. The officers then stated that they were not interested in returning, and that the matter would be presented to the grand jury, which would probably return a murder indictment. At that time the defendant requested to speak to a priest. A priest was called, and conferred alone for some time with the defendant. Thereafter the defendant confessed.

In this case there is no suggestion of physical coercion and there was no prolonged interrogation of the defendant before he confessed. The only possible question arises from the fact that the defendant was not represented by counsel when he confessed. He had been represented by an attorney in Texas in connection with the Dyer Act charge, which involved the transportation of the murder victim's car from Illinois to Missouri. He had there been fully admonished as to his constitutional rights by the United States Commissioner, and he had followed the advice of his attorney and refused to talk to the Illinois officials about the circumstances under which the deceased came to her death. He was again advised of his constitutional rights in Illinois. He was not denied access to counsel, but no attorney was appointed to represent him. His request to consult with a priest was immediately honored, and he did not confess until after that consultation.

*Miranda* v. *Arizona* (1966), 384 U.S. 436, 16 L. Ed. 2d 694, 86 S. Ct. 1602, was not decided until six months after the defendant confessed, and that decision is not retroactive.

(*Davis* v. *North Carolina* (1966), 384 U.S. 737, 16 L. Ed. 2d 895, 86 S. Ct. 1761.) The officers told the defendant what they knew of the offense and asked him for any additional information that he wished to give them. Although he was willing to discuss other criminal charges against him and the possible disposition of those charges, he made no incriminating statements until the officers had stated that they would not accede to his request that they return the following day and had announced their intention to put the matter before the grand jury. Then, after he had requested and been afforded the opportunity to confer with a priest, he confessed. We do not regard the situation which this record shows as comparable to that presented in *Escobedo* v. *Illinois* (1964), 378 U.S. 478, 12 L. Ed. 2d 977, 84 S. Ct. 1758.

The judgment of the circuit court of Sangamon County is affirmed.

*Judgment affirmed.*